THE CHICAGO MACARONI MANUFACTURING CO. *et al.*

*v.*

AGOSTINO G. BOGGIANO.

*Opinion filed April 24, 1903.*

1. EQUITY—*when equity may determine the title to office.* A court of equity may determine the title to an office in a corporation if such question is necessarily involved with the other issues in a case properly before the court, and its determination is necessary in order to give complete relief.

2. CORPORATIONS—*motive of stockholder in casting his votes is not a subject of inquiry.* A stockholder may cast as many votes for each of the candidates for directors as he holds shares of stock or he may distribute his votes for candidates on the cumulative plan, and his motive is not the subject of inquiry or control.

3. SAME—*the president cannot arbitrarily adjourn a regularly called meeting.* A regularly convened stockholders' meeting to elect directors cannot be legally adjourned except by act of the meeting, and the arbitrary adjournment of the meeting by the president does not vitiate the election of the directors receiving the requisite number of votes.

4. SAME—*when officer may recover for performance of extra services.* An officer of a corporation who performs services, apart from the duties of his office, at the request or with the acquiescence of the corporation, may recover compensation therefor upon a *quantum*

*meruit*, but for extra services rendered after notice from the directors to cease rendering the same he cannot recover.

5. SAME—*liability of officer for unlawfully withholding funds is to the corporation.* Funds withheld by an officer as compensation for services for which no compensation can be lawfully allowed should be accounted for to the corporation, and where such accounting is prayed in the bill the decree should not order payment of the amount to the complaining stockholders in proportion to their holdings of stock.

*Boggiano* v. *Macaroni Manf. Co.* 99 Ill. App. 509, reversed in part.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

PEDRICK & DAWSON, for plaintiffs in error.

THATCHER & GRIFFEN, for defendant in error.

Mr. JUSTICE BOGGS delivered the opinion of the court:

At a regular meeting of the stockholders of the plaintiff in error corporation held on the 4th day of January, 1897, an election was held for three directors of the company. The defendant in error, Agostino G. Boggiano, owned 501 shares of the stock, Anthony G. Boggiano, his son, 10 shares and the plaintiff in error Frederick P. Read 488 shares. The capital stock of the corporation consisted of 1000 shares of the value of $10 each, but it seems that one share had never been subscribed for. All the stockholders were present. Defendant in error served as chairman and plaintiff in error Read as secretary. The result of the vote was as follows: Read 1286 votes, G. Ucello 689 votes, Agostino Boggiano and Anthony G. Boggiano each 511 votes. The votes of all the stockholders were cast upon the cumulative plan. Read so divided his votes that it gave to himself and Ucello a majority for two of the directors. The defendant in error thereupon, against the protest of Read and Ucello, declared the stockholders' meeting to be adjourned summa-

rily, subject to be re-convened upon the call of himself,
as president. A few days later he called the meeting of
the stockholders. Read and Ucello attended and sought
to obstruct action by the Boggianos, father and son, but
the records of the meeting were made to show that the
defendant in error, Boggiano, Anthony G. Boggiano and
the plaintiff in error Read were declared to be elected
directors, and that the defendant in error was elected
president and the said Anthony G. Boggiano secretary.
Read and Ucello caused a record to be made showing
that they and the defendant in error were elected direct-
ors, and that Read was elected president and Ucello
secretary. This was a bill in chancery filed by plaintiff
in error Read, in behalf of the Macaroni Manufacturing
Company and himself, against the defendant in error,
for a decree declaring that Read and Ucello be declared
directors and president and secretary of the company,
and that the Boggianos be declared usurpers of the
offices of director and president; that all acts done by
Boggiano as president since February 1, 1897, be declared
void, and he be restrained from acting as director and
president or from interfering with the management of
the business of the company, ordered to turn over to
Read the books, accounts and all property of the com-
pany, and for such other or further relief as equity may
require. The bill also alleged that the corporation was
organized on the 3d day of February, 1893; that the de-
fendant in error was then elected president and treasurer
of the company, and continued to act as such president
and treasurer until the alleged election of said Read as
president and said Ucello as secretary occurred; that no
salary was ever provided by the board of directors to
be paid to the defendant in error as president; that said
defendant in error had, however, improperly appropri-
ated funds of the company to himself in a large sum as
and for his compensation as such president; had received
large sums from property of the company by him sold,

and $4000 or more as insurance loss to the property of the company; had mingled the funds of the company with his own private funds; had not kept books of account of his transactions with and for the company; had never accounted for moneys received by him for the company and was indebted to the company in a sum exceeding $7000. The bill further prayed that the defendant in error be required to make account with the company as president and treasurer or other capacity, and may be ordered and decreed to pay to said company any balance that may be found due upon such accounting from him to said company, and that all notes held by Boggiano without authority be canceled.

Answer was filed to the bill, replication to the answer, and the cause was referred to the master for proofs and for his findings. The master's report of his proof and findings was filed, together with numerous objections and exceptions thereto, which were heard and determined by the court, and a final decree was entered finding the defendant in error, the plaintiff in error Read and said Ucello were the legally elected directors of the corporation; that the defendant in error was indebted to the corporation in the sum of $754.61; that plaintiff in error Read, as owner of 488 shares of the capital stock of said corporation, is equitably entitled to $\frac{488}{999}$ part of said balance of $754.61 so wrongfully appropriated by defendant Boggiano, to-wit, $368.61, and that defendant, Agostino G. Boggiano, should pay the costs of this suit, including the master's and stenographer's fees. Payment was decreed accordingly by the said defendant in error to the said plaintiff in error Read of the said sum of $368.61 within ten days. The defendant in error prosecuted an appeal to the Appellate Court for the First District, where the decree was affirmed, except so far as it ordered the defendant in error to pay the amount charged by the master for the services of a stenographer in taking the depositions. The plaintiffs in error filed cross-

errors in the Appellate Court, and have sued out this writ of error to reverse the judgment of the Appellate Court.

We think the chancellor properly exercised jurisdiction to determine the validity of the election of the said plaintiff in error Read, said Ucello, and the defendant in error, to the office of directors of the company. The jurisdiction to determine such controversies is at law by *quo warranto* proceeding, but where the right and title to an office in a private corporation is, as here, necessarily involved in a case properly before a court of equity, the court will determine it, together with all of the other issues or questions in the case, in order to give perfect relief. (21 Am. & Eng. Ency. of Law,—2d ed.—843.) Those participating in the stockholders' meeting in question were *bona fide* owners of the shares of stock. Section 3 of chapter 32, entitled "Corporations," (1 Starr & Cur. Stat. 1896, p. 990,) empowered each of said stockholders to cast as many votes as he held numbers of shares of stock for each of as many persons as were to be elected as directors, or to distribute such votes for such persons for directors on the cumulative plan. The motives which actuated any stockholder in distributing his votes is not a subject of inquiry or control. (3 Thompson on Corporations, 3870.) The stockholders' meeting was regularly convened, and it could not have been legally adjourned except by the act of the meeting itself. (1 Thompson on Corporations, 720.) The arbitrary course pursued by the defendant in error did not operate to vitiate the election of the persons as directors who had received the requisite number of votes of the stockholders. There was no error in the finding and decree that the defendant in error, said plaintiff in error Read and said Ucello were legally elected directors of the corporation at said meeting.

In the adjustment of the accounts in the circuit court the defendant in error was allowed compensation in the sum of $885 for services rendered to the company in and about the business and affairs of the corporation entirely

disconnected from the duties which devolved upon him as president, treasurer or director of the corporation. In this it is urged the trial court erred, for three reasons: (1) That such payment was not authorized by the by-laws of the company or by any action of the board of directors; (2) that there was no allegation in the defendant's answer claiming or justifying such relief and allowance; and (3) there was no evidence that he had rendered any services outside of his duties as president, treasurer or director.

It appeared from the testimony of the defendant in error that from the time of the organization of the corporation he devoted his entire time and attention to the affairs of the company; that he acted as salesman, bookkeeper, collector of bills, shipping clerk, worked at filling orders, packing goods, superintended the work of others and served as both superintendent and workman. This proof was corroborated by the testimony of Louis Aiana, and we find nothing in the evidence controverting it. Moreover, it appeared such services were rendered by the defendant in error with the knowledge and approbation of all of the stockholders of the company and all of its directors during the entire period of time for which compensation was allowed by the decree. The services were in part,—perhaps the larger part,—not such as it was within the official duty of the defendant in error to perform. There was no objection presented to the reception of this testimony on the specific ground that it was beyond the allegations of the answer. That there is a variance between the proofs and the allegations of the pleading cannot be raised for the first time in this court. The rule is, it must be specifically urged in the trial court, for the reason, if well grounded, it may be obviated by amendment.

While the principle is well established that in order to entitle an officer of a private corporation to receive compensation for the performance of the duties of his office it is necessary such compensation should have been.

authorized by the board of directors or by the by-laws of the company, it is also the rule that for the performance of duties or services outside of and apart from those imposed upon him by virtue of his office, such officer may, if such extraordinary services were rendered at the request or with the acquiescence of the corporation, recover upon a *quantum meruit.* (*Rockford, Rock Island and St. Louis Railroad Co.* v. *Sage,* 65 Ill. 328; *Cheeney* v. *Lafayette, Bloomington and Mississippi Railway Co.* 68 id. 570; *Gridley* v. *Lafayette, Bloomington and Mississippi Railway Co.* 71 id. 200; 21 Am. & Eng. Ency. of Law,—2d ed.—909.) Defendant in error claimed compensation from February 11, 1893, to November 1, 1894, at $75 per month. From the beginning of that period until the 13th day of October, 1894, one G. Ucello and the defendant in error owned all of the stock of the corporation, practically in equal parts, the difference in their holdings being that defendant in error owned two shares more than Ucello, and both said defendant in error and said Ucello, until the 31st day of August, 1894, devoted their entire time and attention to the business affairs of the corporation. No salary or compensation was provided for either of them. They each withdrew equal sums of money from the treasury of the company, and the trial court properly ruled that the defendant in error should not be allowed any compensation for services prior to said 31st day of August, 1894.

The defendant in error claimed compensation at the rate of $60 per month from the first day of November, 1894, until the time of the accounting, but the chancellor ruled that the services rendered by him after the first day of February, 1897, were not at the request or with the acquiescence of the corporation, for the reason the new board of directors, as hereinbefore set forth, had previous to the day last named been duly elected and had served notice upon the defendant in error to cease to perform the duties of president or render other service to the company, and demanded that he surrender up the

property and effects of the corporation to them. The services rendered by the defendant in error after such demand were without the authority of a by-law of the corporation or any action of the board of directors, and were not with the consent of the corporation, and did not create any liability on the part of the corporation to compensate him therefor.

It was the view of the chancellor that it appeared from the proofs that the time and attention of the defendant in error during the period for which he was entitled to receive compensation were devoted in about equal parts to the discharge of such duties as pertained to his office and to duties extraordinary to those of his office and apart from and beyond his official duties, and that therefore he should only be allowed one-half the monthly compensation claimed by him. The court consequently allowed him compensation at the rate of $37.50 per month for the months of September and October, 1894, and at the rate of $30 per month for the period beginning November 1, 1894, and ending January 31, 1897, making a total amount of such compensation of $885. The evidence justified this action of the chancellor.

It appeared from the books kept by the defendant in error that he had received $50,854.28 for the company during the entire time since its organization; that he had paid out for purposes of the corporation (not including items of payments for his compensation) the sum of $48,805.57, leaving a difference between the amounts received and amounts disbursed in the sum of $2048.71, to be accounted for to the corporation by the defendant in error. From this sum the court deducted the sum of $885 allowed to defendant in error for his compensation, and also the sum of $409.10 shown by the evidence to be due the defendant in error for the purchase price and interest for machinery supplied to the company, making the total of such deductions the sum of $1294.10. This would leave the defendant in error liable to the corpora-

tion in the sum of $754.61, and such was the decree. We have considered the briefs and arguments of counsel and consulted the evidence preserved in the record, and believe such conclusion of the chancellor to be well supported by the proofs. The liability thus declared against the defendant in error consisted almost wholly of the amount retained by him for services which the court found were of that character for which compensation could not be allowed in the absence of a by-law or action on the part of the board of directors. There was no vexatious or unreasonable delay of payment to justify a decree requiring him to pay interest thereon.

The liability of defendant in error as to the amount fixed by the decree was and is to account to the corporation for it. Such was also the prayer of the bill. The decree ordering that he should pay the same to the plaintiff in error Read in proportion as said Read owned the shares of the capital stock of the corporation cannot be approved. The decree should have authorized the recovery by the corporation and required that the defendant in error pay to the corporation. The cross-error of defendant in error as to this point is sustained. In all other respects the decree of the circuit court as modified by the judgment of the Appellate Court, and the judgment of the Appellate Court, are affirmed.

For the error indicated, the judgment of the Appellate Court must be reversed and the cause will be remanded to the superior court, with directions to that court to enter a decree awarding recovery in favor of the corporation against the defendant in error in the sum of $754.61. The costs in this court and in the Appellate Court will be taxed to plaintiff in error Read.

*Judgment affirmed in part and in part reversed and remanded, with directions.*