THE AMERICAN ABERDEEN-ANGUS BREEDERS' ASSOCIATION *et al. vs.* S. C. FULLERTON *et al.* Defendants in Error.—(CHARLES GRAY *et al.* Plaintiffs in Error.)

*Opinion filed April 20, 1927.*

1. CORPORATIONS—*presiding officer cannot arbitrarily defeat the will of majority.* Where the by-laws of a corporation not for pecuniary profit provide that for the purpose of an election and the transaction of other business a quorum shall consist of the members present in person or by proxy, the presiding officer at the annual meeting of the association cannot arbitrarily defeat the will of the majority, represented by members and proxies, by refusing to entertain or put motions or by wrongfully declaring the result of a vote, as he is the representative of the body over which he presides and the will of the majority of the members and proxies is binding on him.

2. SAME—*provision of constitution for cumulative voting of stock does not apply to corporations not for profit.* The provision of section 3 of article II of the constitution that in the election of directors or managers a stockholder may cumulate the vote of the shares of stock held by him does not apply to corporations not for pecuniary profit and not having stockholders or shares of stock.

3. CONSTRUCTION—*the rules of constitutional and statutory construction are the same.* The rules of constitutional and statutory construction are the same, and the object in each case is to arrive at the intention expressed by the language used, in view of conditions existing at the time of its use.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

WINSTON, STRAWN & SHAW, (JOHN D. BLACK, and HAROLD A. SMITH, of counsel,) for plaintiffs in error.

WALTER F. DODD, W. R. MATHENY, and PALMER D. EDMUNDS, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The American Aberdeen-Angus Breeders' Association is a corporation, not for profit, organized under the laws of Illinois for the purpose of collecting, verifying, preserving and publishing the pedigrees of the polled Aberdeen-Angus breed of cattle so as to maintain the purity of the breed and to do such other acts as will best promote the interests of the breed in America. The association was organized in 1883, and prior to 1923 had obtained a membership of between 5000 and 6000 breeders of Aberdeen-Angus cattle, residing in various States of the Union and in Canada. Its business affairs were managed by a board of nine directors, three of whom were elected annually for terms of three years at the annual meeting of the association held in Chicago in November or December, by the votes of the members present at the meeting or represented by proxies. The average attendance of members at such meetings for five years prior to 1923 had been about 100, with proxies numbering from 2000 to 2300. The question of changing the government of the association by establishing a representative form of government instead of control through an annual meeting with proxy voting had been favored by some members of the association, and a resolution favoring this change was rejected at the annual meeting of 1922. At the annual meeting on December 5, 1923, 146 members were present in person and 2787 proxies were presented, of which the proxy committee rejected 389. Candidates were nominated for the offices of three directors which were to be filled. The printed ballots were distributed, and when the vote had been cast the tellers reported that John C. Mills had received 1719 votes, J. M. Tudor 1709, S. C. Fullerton 1701 and A. C. Johnson 3544, of which 3496 were cumulative votes, and if each man had voted one-third of his votes for Johnson he would have had 1218 votes. The president declared the three candidates receiving the highest votes elected. A

member of the association, Hartley, moved that the report of the tellers be rejected and Fullerton, Mills and Tudor be declared elected. The president declared the motion out of order. An appeal was taken from his decision, and that was also declared out of order. Thereupon Fullerton was nominated from the floor as chairman of the meeting. The maker of the motion put it, declared it carried, a number of the members came upon the platform where the president, secretary and treasurer were, ejected them from their positions and Fullerton assumed authority as chairman of the meeting. He appointed ten sergeants-at-arms, the ballots, proxies and other papers were taken from the secretary, and some private papers were taken from the treasurer but were returned to him. When this occurred a number of the members present withdrew from the meeting. Fullerton, acting as chairman, entertained the appeal which had been taken from the decision of the chair, it was sustained, and the motion to reject the report of the tellers and declare Fullerton elected was carried on a roll call by a unanimous affirmative vote of 1724. The meeting then proceeded to adopt an amendment to the by-laws providing for the election of the president by the members by ballot at the annual meeting instead of by the directors, elected Fullerton president and adopted other amendments to the charter and by-laws. Charles Gray, who had been the secretary of the association since 1907, and Len H. Lamar, a member and treasurer of the association for several years, together with the corporation, a few days later filed a bill against Fullerton and seven other defendants who had supported him in his candidacy for director, asking for an injunction to restrain the defendants from taking possession of the office rooms, records and assets of the association and from interfering with or molesting the complainants individually or as officers of the association and for further relief. Answers were filed setting up the proceedings at the annual meet-

ing of December 5, claiming that Fullerton was legally elected director and president of the association. Replications were filed, and upon a hearing a decree was rendered holding that the proceedings of the meeting of December, 1923, were illegal; that the cumulative votes should have been counted; that Fullerton was not elected a director or president but that Johnson was elected director; that upon the ejection of the president and secretary of the association from their positions in the meeting the annual meeting terminated and the subsequent proceedings at that time were illegal and did not result in an amendment of the by-laws, but that the proceedings of the meeting of December, 1923, were ratified by the action of the annual meeting of December, 1924, which was held under the direction of the court, and that at that meeting Fullerton was elected president; that Gray and Lamar were secretary and treasurer, respectively, their terms of office having expired but their successors not having been elected; that members of the association had a right to cumulate their votes at the elections for directors of such association and had such right at the meetings of 1923 and 1924; that at the 1924 meeting the association lawfully changed and amended the form of the corporation to provide for its control through a delegate or representative system. The complainants sued out a writ of error from the Appellate Court for the First District, and the defendants in error having assigned cross-errors raising a constitutional question, the cause was on their motion transferred to this court.

The by-laws provided that for the purpose of an election and the transaction of other business a quorum should consist of the members present either in person or by proxy. A majority of the members of the association present in person or by proxy at the annual meeting in 1923 voted for Fullerton, Mills and Tudor for directors, and they were elected unless the minority who voted for Johnson had the right to cumulate the three votes which each was entitled

to cast for directors and cast them all for one person. If they had this right Johnson was elected instead of Fullerton. This is the question which caused the revolt in the meeting, the deposition of the chairman and the election of another in his place. The right of the majority of the members to control the action of the meeting cannot be questioned. A presiding officer cannot arbitrarily defeat the will of the majority by refusing to entertain or put motions, by wrongfully declaring the result of a vote, or by refusing to permit the expression by the majority of its will. He is the representative of the body over which he presides. His will is not binding on it, but its will, legally expressed by a majority of its members, is binding. (*Pevey* v. *Aylward*, 205 Mass. 102; *Attorney General* v. *Remick*, 73 N. H. 25.) The body has authority to remove its presiding officer and choose another in his place. (*In re Speakership of House of Representatives*, 15 Colo. 520.) If the members were not authorized to cumulate their votes the election of directors was to be determined by the number of individuals casting votes for the respective candidates, and the election could not be vitiated by an arbitrary refusal to declare the true result according to the number of members voting for each director and the meeting could not be legally terminated except by its own act. (*Chicago Macaroni Co.* v. *Boggiano*, 202 Ill. 312.) At the first step in the consideration of the case the question is therefore presented whether the members of the association had the right to cumulate their votes in the election of directors and each cast three votes for one person.

Section 3 of article 11 of the constitution provides: "The General Assembly shall provide, by law, that in all elections for directors or managers of incorporated companies, every stockholder shall have the right to vote, in person or by proxy, for the number of shares of stock owned by him, for as many persons as there are directors or managers to be elected, or to cumulate said shares, and

give one candidate as many votes as the number of directors multiplied by the number of his shares of stock shall equal, or to distribute them on the same principle among as many candidates as he shall think fit; and such directors or managers shall not be elected in any other manner." In form this language is universal and applies to all elections of every incorporated company, but its substance is of such a character as to indicate that it was not intended to apply to corporations not having stockholders or shares of stock. The right to vote is given to stockholders, and the number of votes a stockholder may cast is fixed according to the number of his shares of stock. The rules of constitutional and statutory construction are the same, (*People* v. *Hutchinson,* 172 Ill. 486,) and the object in each case is to arrive at the intention expressed by the language used in view of conditions existing at the time of its use. The constitutional provision authorizing the cumulation of votes in the election of directors or managers or trustees might have been made to apply to all corporations and left no room for construction, but the language chosen was such as was appropriate only to corporations having capital stock, stockholders and shares of stock. Corporations organized not for profit, under the laws of this State, have no capital stock, no shares of stock and no stockholders. (*Press & Co.* v. *Fahy,* 313 Ill. 262.) Many corporations of this character having no shares of stock existed in Illinois prior to the adoption of the constitution of 1870, created either by acts of the legislature or organized under general statutes providing for their formation. The natural construction is to apply the provisions to that class, only, which has capital stock, shares of stock and stockholders. Accordingly, the first legislature elected after the adoption of the new constitution passed an act providing for the organization of corporations for profit and corporations not for profit, providing that every stockholder of a corporation should have the right, in all

elections for directors, to cast as many votes for one person as the number of directors multiplied by the number of his shares should equal, or divide that number of votes among as many candidates as he saw fit, but corporations, associations and societies not for pecuniary profit should elect trustees, directors or managers not from the stockholders but from the members thereof at such times and places and for such period as might be provided for by the by-laws, who should have the control and management of the affairs and funds of the corporation, society or association. (Laws of 1871-72, secs. 3, 32, p. 296.) This constitutes a contemporaneous legislative construction which has stood unchanged and unquestioned for more than fifty years, and we regard it as in conformity with the requirement of section 3 of article 11 of the constitution.

The question of the manner of election of trustees or managers of corporations not for pecuniary profit was involved in the case of *People* v. *Grant*, 283 Ill. 391. In that case the American Medical Association, a corporation not for pecuniary profit organized under the law of Illinois, having a large number of members from many States and from the medical officers of the army and navy and the United States public health and marine hospital service, had adopted a system of representative government under which the management of the affairs of the association was vested in a house of delegates, consisting of delegates elected by constituent State and territorial associations, scientific sections of American medical associations, the medical departments of the army and navy and the United States public health and marine hospital service. The house of delegates was authorized to elect three trustees each year, "at such place in such city and State as such house of delegates might assemble." The action was an information in the nature of *quo warranto* to oust the defendants from the office of trustees to which they had been elected by the house of delegates, some at Minneapo-

lis, Minnesota, others at Atlantic City, New Jersey, and still others at San Francisco, California, and the basis of the action was that the association had no authority, under its charter or the laws of the State, to adopt a constitution or by-laws by which the members of the association might be deprived of the right to vote at the election of trustees or by which the election of trustees beyond the boundaries of the State was authorized. The opinion in that case recognizing the different character of corporations organized for pecuniary profit and corporations organized not for pecuniary profit, sustained the validity of the by-laws providing for the election of trustees by the house of delegates at such place as it should fix under section 32 of the act of 1872 concerning corporations, which has been cited. The constitutional question was not discussed and does not seem to have been raised in that case, but to hold that the constitution requires the application of the rule of cumulative voting to the election of directors of the association here would be inconsistent with the rule announced in that case and would require it to be overruled. We agree, however, with the decision that the members of corporations organized not for pecuniary profit have no constitutional right of voting for directors, and the corollary follows that they have not the right of cumulative voting.

Since the constitutional right of cumulative voting did not apply to the association the president was mistaken in announcing from the report of the tellers that Johnson was elected a director. He was also mistaken in declaring the motion to reject the report of the tellers out of order and refusing to entertain an appeal from his ruling, and the majority of the members present in person and by proxy were justified in exercising the power of the majority, in the absence of any by-laws or rules of order contrary to such action, by deposing the chairman and proceeding with the business of the meeting. The fact that the president, secretary and treasurer all, or any of them, left the meet-

ing or remained, or that others did either, did not affect the power of the majority who remained and constituted a quorum to do business or the legality of their action. The subsequent proceedings constituted a part of the action of the annual meeting of the association. The by-laws of the association provided for their amendment by a majority vote of the members represented in person or by proxy at an annual meeting or any adjournment thereof. After the substitution of Fullerton as chairman an amendment to the by-laws providing a method of amending the charter was adopted,—also an amendment of the charter increasing the number of directors from nine to fifteen,—six directors were elected, two for one year, two for two years and two for three years.

The court made an order that all the affairs of the association remain as they were until the further order of the court, and that the ordinary business of the association be continued in the usual way, under the control of the secretary, Charles Gray. The annual meeting of 1924 was held, beginning on December 3, under the supervision of the court, in accordance with an order for that purpose, and a full report of it was presented to the court. At this meeting resolutions were adopted ratifying the amendments adopted at the 1923 meeting and which were set out in the resolution and re-affirmed in the same words, directors were elected, the amendment to the charter increasing the number of directors was also ratified and re-affirmed, and an amendment of the charter was adopted providing for the election of fifteen directors by a convention of delegates, and the by-laws were amended to provide for a representative system of government, under which a convention of delegates selected in districts constituted of the various States and Territories should be held in Chicago each year. The amendment provided that nominations for delegates might be made by any member in the manner specified in the by-laws. The secretary was required to prepare

a ballot for each district, mail it to each member in the district, the members might vote for any person whether on the ballot or not, the ballots were to be returned to the secretary in sealed envelopes and to be opened and canvassed by the committee on credentials, which should report to the convention. Formal notices were to be sent to those elected. The convention was given power to elect directors and officers and to transact all other business of the association not specifically provided for in the by-laws. A meeting of all members was provided for each five years, at which the president should present a report. The recommendations of his report, together with the proceedings and recommendations of such meeting, were required to go to the convention of delegates for action. Three-fourths of all members of the association constituted a quorum at such meeting, but a less number might hear the president's report and make recommendations to the delegates. It was the manifest purpose of the change in the system of government to withdraw from the direct action of the members the election of directors and control of the business of the association in a general meeting. Whether or not the action was wise or for the benefit of the association is not a question for us to consider. It was within the power of the association to adopt this form of government. The statute provides that the by-laws of the association shall provide for regular meetings of the members at least once in five years, and that at any such meeting members of the corporation shall take part and vote in person or by proxy, but it does not provide that the directors shall be elected at any such meeting and does not provide that the members shall be authorized to vote for directors.

It is contended that the attempted amendment of the charter in 1923 was ineffectual until the certificate thereof, verified by the oath of the president, was filed in the office of the Secretary of State and recorded in the office of the

recorder of deeds in Cook county, and that no such certificate was filed until after the adjournment of that meeting; that therefore the amendment providing for six additional directors was void because not authorized by the charter; and the other amendments of the by-laws, it is contended, are void because adopted after the final termination of the meeting by the deposition of the president. Whether the election of the additional directors in 1923 was void or not it is unnecessary to determine. At the meeting in 1924 the charter was amended in accordance with the by-law providing therefor adopted at the meeting of 1923, and the certificate of such amendment was duly filed. The additional directors were then elected under that amendment. The court, however, erroneously decreed that because of the authority to vote cumulatively J. D. Blackwell was elected director in 1924 instead of Philip R. Park, as well as A. C. Johnson in 1923 instead of S. C. Fullerton. The decision of the case depends upon the application of the constitutional provision for cumulative voting for directors, which the superior court erroneously held applied at the annual meetings of the members of the association.

The assignments of cross-errors by the defendants in error will be sustained. It results that the decree will be affirmed in all respects except as to the holding that the cumulative voting for directors was authorized at the annual meetings of the members of the association in 1923 and 1924, that A. C. Johnson was elected as director in 1923 instead of S. C. Fullerton, that J. D. Blackwell was elected a director in 1924 instead of Philip R. Park, and that the actions of the meeting of 1923 after the removal of the presiding officer were not legally effective, and in those particulars the decree is reversed and the cause is remanded, with directions to modify the decree in accordance with this opinion.

*Reversed in part and remanded, with directions.*