**FARMERS NO. 4, INC., et al., Appellants,**

v.

**LEXINGTON TOBACCO BOARD OF TRADE et al., Appellees.**

**FARMERS NO. 4, INC., et al., Appellants,**

v.

**SOUTHWESTERN TOBACCO COMPANY et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 13, 1970.

Rehearing Denied Feb. 5, 1971.

Frank S. Ginocchio, Lexington, for appellants. .

Rufus Lisle, Harbison, Kessinger, Lisle & Bush, Lexington, for appellees.

CLAY, Commissioner.

These consolidated actions raise two questions involving the internal management and operation of the Lexington Tobacco Board of Trade, a corporation (hereinafter Corporation). Those questions are whether "participating associate members" may vote for and serve on the Board of Directors and certain committees of the Corporation, and whether the members are entitled to cumulate their votes in the election of directors. The judgment appealed from answered the first question in the affirmative and the second question in the negative.

The Corporation was incorporated as a nonstock, nonprofit one in 1935. In 1962 the legislature enacted KRS 248.015, providing for the organization of a tobacco board of trade on every market at which tobacco is offered for sale at auction. The Act did not require, and apparently did not anticipate, incorporation. However, the Corporation in 1962 adopted as amended Articles the pertinent provisions of Chapter 248. As observed by the Chancellor, the difficult problems of management are occasioned by the corporate form.

The principal plaintiff appellants are operators of tobacco auction warehouses. The principal defendant appellees are buyer members of the Corporation. It is appellants' basic contention that the Articles and Bylaws of the Corporation violate KRS 248.025 in giving the minority buyer members unwarranted control of the tobacco board of trade. We agree.

KRS 248.025 provides that the membership of each tobacco board of trade shall consist of active members and associate members. The operators of warehouses are the active members. The tobacco buyers can become associate members, either participating or nonparticipating. A nonparticipating buyer member has no right to vote upon *any* question before the board. He may become a participating member upon written application. However, the statute provides in part:

"A participating associate member shall not participate in or have any voice or vote in the management, conduct, activities, allotments of sale time and/or hours, affixing of dates for the opening or closing of the tobacco markets serviced by the tobacco board of trade, or in any other manner or respect relating strictly to the functions normally performed by the warehouse members of the tobacco board of trade."

At the time this controversy arose there were 23 active members of the board (and Corporation) and four participating asso-

ciate members. In 1962 the Articles of the Corporation were amended to provide that its affairs should be conducted and managed by a board of eight directors, four of whom were to represent the warehouse interests and four to represent buying interests. They were to be elected by majority vote of the "active and participating associate members of the Corporation". A Bylaw adopted at the same meeting confirmed this arrangement. By virtue of this management provision in the Articles and the Bylaw, the minority buyer members have equal representation on the Board of Directors with the majority warehouse members and they participate in the appointment of committees which it is contended, and apparently conceded, perform warehouse functions.

■ It is contended by appellants that the provisions of KRS 248.025, above quoted, prohibit the participation by an associate member in the management of the Corporation and therefore they cannot either vote for or serve as members of the Board of Directors, or serve as members of committees performing warehouse-member functions. It seems the legislature in enacting KRS 248.025 intended that a "participating associate member" should participate in something. A "nonparticipating member" was denied the right to vote on anything. Therefore a participating member, at least by implication, was given the right to vote on some phase of the operation. In the absence of the corporate form he would have the right to vote on any matters other than those specifically named in the statute or "relating strictly to the functions normally performed by the warehouse members". Several matters on which he would have a right to vote appear in KRS 248.015. However, it is made abundantly clear in KRS 248.025 that the active warehouse members are to play the principal roles in the management of a tobacco board of trade.

It is pointed out by appellants that since the associate members under the corporate articles have the same number of representatives on the Board of Directors as do the active members (4 each), the former are in a position to block, and must almost necessarily obstruct, the conduct of any business involving warehouse-member functions. This is so because they are disqualified by KRS 248.025 from voting on such matters of management, and there could be no majority vote of the Board of Directors without the vote of an associate member director. We have a most anomalous situation when half of the members of a board of directors of a corporation are disqualified from voting on the principal business matters coming before it. This is no way to run a railroad.

■ It is argued on behalf of appellees that the associate member directors generally have observed the limitations on their right to vote by abstaining from voting on those matters involving warehouse-member functions. This does not always seem to have been the case, but in any event their presence at board meetings when these matters are discussed would seem to constitute participation in the management and activities of the board of trade, which KRS 248.025 forbids.

Another illustration of the impossible position of the associate members in the management of the tobacco board of trade involves the Sales Committee elected by the Board of Directors. This committee decides all questions relating to the time of holding sales and the conduct thereof. These are matters which KRS 248.025 expressly provides shall not be participated in or voted on by participating associate members. Under the Bylaws of the Corporation, however, it is provided that three members of this committee shall be buyers. It is also provided in the Bylaws that appeals from decisions of this committee shall be taken to the Board of Directors, which shall make the final decision. It appears that the buyer associate members (or those representing them) not only sit on the Board of Directors but vote on the election

of themselves to the Sales Committee. This is a double-barrelled participation and voting upon sales matters normally managed by warehouse members, which is contrary to the mandate of the statute. This same objection may be made to the activities of the Arbitration Committee, which is set up like the Sales Committee.

As we have heretofore observed, the problems presented here arise from the attempt to conduct the business of a tobacco board of trade in corporate form, which the statute never contemplated. We do not say that it is improper to utilize a corporate form to carry out the purposes of the tobacco board of trade Act. What we do conclude is that the Articles and Bylaws of this Corporation are clearly inconsistent with and repugnant to the management scheme created by the legislature. The membership of the Lexington Tobacco Board of Trade has tried to breed a horse to a cow, and it simply will not work.

█ It may be that the tobacco board of trade Act is a bad law. However, converting a tobacco board of trade into a corporation or a corporation into a tobacco board of trade, as was done here, is not a permissible way of avoiding the provisions of the statute. In our opinion the method of management of the Corporation violates the method of management prescribed by the statute. The associate members of the tobacco board of trade cannot properly serve as Directors of the Corporation, nor can they serve on those committees which perform functions normally performed by warehouse members. Since voting for the Directors is likewise participating in the management contrary to KRS 248.025, the associate members are prohibited from casting such votes. We believe the Chancellor was in error in concluding otherwise.

█ The next question raised concerns section 207 of the Kentucky Constitution, which provides for cumulative voting. The Chancellor decided that this section did not govern the rights of members in a nonprofit, nonstock corporation. We agree. Section 207 provides:

"In all elections for directors or managers of any corporation, each *shareholder* shall have the right to cast as many votes in the aggregate as he shall be entitled to vote in said company under its charter, multiplied by the number of directors or managers to be elected at such election; and each shareholder may cast the whole number of votes, either in person or by proxy, for one candidate, or distribute such votes among two or more candidates, and such directors or managers shall not be elected in any other manner." (Emphasis added)

It will be noted this provision grants rights to each "shareholder". There are no shareholders in the appellee Corporation. Appellants would have us construe the word "shareholder" as including a "member" of a nonstock corporation. They cite Commonwealth v. Acker, 308 Pa. 29, 162 A. 159 (1932). In that case, however, the constitutional provision granting the right of cumulative voting gave it specifically to a "member" as well as a "shareholder". On the other side, appellees cite American Aberdeen-Angus Breeders' Association v. Fullerton, 325 Ill. 323, 156 N.E. 314 (1927). The constitutional provision there involved was clearly limited to stockholders owning "shares of stock". Other related cases appear in 43 A.L.R. 1328. We find no controlling decisions.

Cumulative voting apparently was not authorized at common law but exists by virtue of constitutional, statutory, charter or bylaw provisions. 19 Am.Jur.2d, Corporations, § 663 (page 169). The recognized purpose is to allow minority stockholders to secure representation on the board of directors. 19 Am.Jur.2d, Corporation, § 662 (page 168). Since there are no minority stockholders in a nonstock corporation, the reason for recognizing such a right is not apparent. Section 207 of the Kentucky Constitution grants the

right to a "shareholder", and the members of this Corporation are not shareholders. As did the Chancellor, we must construe this section as creating a right in holders of interests in corporations issuing stock.

Appellants point out that under KRS 304.174(3) and KRS 342.500 the legislature has permitted voting under section 207 in nonstock corporations. The General Assembly may do this, but, in the absence of legislation extending this voting right to a nonstock corporation, it does not exist. The very fact that the legislature has seen fit to make reference to section 207 in certain statutes indicates it has recognized that ordinarily a nonstock corporation would be outside the operative scope of section 207. See 19 Am.Jur.2d, Corporations, § 664 (page 170). On this question the Chancellor ruled correctly.

The judgment is affirmed in part and reversed in part, with directions to enter judgment consistent with this opinion.

All concur.