SUCESORES DE ABARCA, S. EN C., demandante, *v.* CENTRAL VANNINA, INC., demandada; EDUARDO J. SALDAÑA, ARTURO B. ECHEVARRÍA, JUAN RAMOS, MATEO BARTOLOMEY, FIDO FRANCESCHI, JOSÉ ROCAFORT, NICOLÁS TORRES y JUAN VILÁ, demandantes y apelados, *v.* MANUEL COMAS, como síndico sustituto de la Central Vannina, Inc., demandado y apelante.

No. 4836.—*Sometido:* Febrero 7, 1930. *Resuelto:* Julio 15, 1930.

*Jaime Sifre Jr.* y *Horacio Franceschi,* abogados del Síndico apelante; *Dubón & Ochoteco, R. Cintrón Lastra* y *R. Arroyo,* abogados de los reclamantes-apelados.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

En un caso civil ante la Corte de Distrito de San Juan, la demandada, Central. Vannina, presentó una moción en la que alegó, entre otros extremos, que en los libros de la corporación figuraba una partida de $23,170, por concepto de gratificaciones a empleados y oficiales de la misma corporación, por acuerdo de la junta directiva y de la junta general de accionistas, acuerdos que se tomaron a condición de que si se vendían los azúcares al alto precio que habían alcanzado, tal cantidad se destinaba a dicho fin, y siempre a juicio de la junta de directores; el azúcar se vendió a bajo precio, produciendo perjuicios a la corporación; y el board de directores acordó eliminar de los libros la referida partida; por lo que se pedía a la corte ordenara que los síndicos procedieran a practicar en los libros de la corporación las operaciones necesarias.

. A esa moción se opusieron Eduardo E. Saldaña, Arturo J5. Echevarría, Juan Ramos, Mateo Bartolomey, Fido Franceschi, José Rocafort, Nicolás Torres y Juan Vilá, a cuyo favor estaban consignadas ciertas sumas, dentro de la partida expresada, alegando que tenían sus créditos en concepto de bonificaciones por la zafra que terminó en julio de 1920, según acuerdo de la junta de directores aprobado por la de accionistas de 14 de agosto de 1920, resolución que ha permanecido en fuerza y que es obligatoria para la corporación; que esas bonificaciones fueron ofrecidas antes de terminar la zafra de 1920, y por ello los ahora opositores trabajaron durante un período de tal zafra, y consideraron la bonificación como una parte de su sueldo, y como un contrato; que esos créditos son preferentes; que en 29 de febrero de 1924, la junta de directores de la Central Vannina tomó el acuerdo de saldar tal cuenta de bonificaciones, y que se eliminara de los libros la partida, acuerdo ilegal, porque la junta de directores carece de facultades para dejar sin efecto el de la general de accionistas; que niegan que el acuerdo de bonificación fuera bajo la condición de que los azúcares se vendieran al alto precio aludido; que sobre esas bonificaciones

el compareciente Echevarría, que era entonces cajero de la corporación, ha hecho adelantos de sumas que ahora tendría que pagar de su peculio.

La corte, en resolución de 27 de mayo de 1924, no autorizó la eliminación de la partida, reservándose para resolver en el fondo, en cuanto a la justicia de las reclamaciones que se hicieron.

En 16 de marzo de 1925 los antes citados señores Saldaña, Echevarría, Ramos, Bartolomey, Franceschi, Rocafort, Torres y Vilá, acudieron a la corte y pidieron discusión y consideración de las reclamaciones presentadas.

Aparece en récord, radicada en corte, una estipulación de las partes, Central Vannina, y los peticionarios Saldaña y demás antes nombrados, ambos por sus abogados, en la que convienen en los hechos esenciales del caso, en la siguiente forma:

"I.—Acepta el síndico que los peticionarios referidos han presentado oportunamente y por conducto del referido síndico sus reclamaciones contra la demandada Central Vannina, Inc., en el caso pendiente ante esta Corte No. 3297 sobre administración judicial y otros extremos.

"II.—Que las reclamaciones de dichos señores se contraen al pago de las bonificaciones correspondientes a la zafra del año 1919 al 1920 aprobadas en junta general de accionistas de la Central Vannina, Inc., celebrada en 14 de agosto de 1920, según acuerdo que en su parte dispositiva dice así:

" 'Dióse cuenta con la planilla de los funcionarios, personal y empleados para el próximo año con los sueldos asignados a cada uno, a contar del 1ro. de julio próximo pasado, y gratificaciones por el pasado que dice así:

" '*Gratificaciones*

" 'Eduardo Saldaña_____$3, 000. 00
" 'Arturo Echevarría_____ 600. 00
" 'Nicolás Torres_____ 260. 00
" 'José Rocafort_____ 220. 00
" 'Juan Vilá _____ 101. 00

y se acordó aprobarla en todas sus partes.'

"III.—Que en septiembre 15 de 1921 se aprobó asimismo por la junta general de accionistas de la Central Vannina, Inc., el siguiente acuerdo:

" 'Dióse por el Secretario lectura del acta anterior y fué aprobada, pero aclarando el acuerdo que contiene el particular 4to. de dicha acta sobre sueldos y gratificaciones al personal y empleados, haciendo constar que la cantidad de $23,170.00 que importan las gratificaciones aludidas fué cancelada para ser satisfecha cuando a juicio del Board de Directores de la corporación esté en situación económica adecuada, de modo que los recursos de que pueda disponer le permitan cumplir sin perjuicio de las obligaciones ordinarias de la corporación tal acto de generosidad, hoy imposible de realizar debido al quebranto experimentado en la venta de azúcares de la cosecha pasada y a la pérdida sufrida en la zafra de este año.'

"IV.—Que los solicitantes fueron notificados del acuerdo primeramente citado antes de la terminación de la zafra del año 1919 al 1920, unos por don Damián Monserrat, Presidente de la corporación, y otros por el señor Vicente Antonetti, administrador general de la Central Vannina, y que los peticionarios aceptaron las notificaciones y actuaron durante el resto de la zafra bajo la creencia de que las prometidas bonificaciones les serían satisfechas.

"V.—Que las bonificaciones referidas se aprobaron porque a juicio de los directores y de los accionistas de la Central Vannina, Inc., los servicios prestados por los empleados referidos habían sido muy satisfactorios y existía una ganancia razonable que hacía permisible la concesión de dichas bonificaciones.

"VI.—Que en la memoria sometida a la Junta General de Accionistas de la Central Vannina, Inc., en 14 de agosto de 1920 por los directores de dicha corporación, bajo el estado No. 3 sobre 'balance de la liquidación de la zafra de 1919 a 1920' aparece como balance o beneficio la suma de $804,478.39 y en el estado No. 4 también incluído en dicha memoria aparece como beneficio líquido en dicha zafra la suma de $776,079.38. Que este balance representaba en la fecha en que se practicó dicha memoria el valor en el mercado de entonces de los azúcares propiedad de la Central Vannina, Inc., que no estaban vendidos; y como cuestión de hecho y debido al súbito descenso del precio del azúcar la zafra de 1919 a 1920 produjo solamente una pequeña ganancia que trajo como resultado la presente sindicatura.

"VII.—Que a los efectos de fijar y conceder bonificaciones a sus empleados la Central Vannina, Inc., toma por lo regular en conside-

ración juntamente con los buenos servicios prestados por dichos empleados, el mayor o menor precio a que se venda el azúcar producido y los beneficios generales obtenidos.

"VII.—Que de acuerdo con los 'By-Laws' de la Central Vannina, Inc., los directores de dicha corporación no tienen facultades para conceder gratificaciones a los empleados de Central Vannina, Inc., sin el consentimiento de la Junta General de Accionistas de dicha corporación."

A nuestro entender esta estipulación tiene una importancia capital en el caso. Ella fija los hechos que las partes admiten como si fueran probados; y sobre esa base de hecho toca a la corte aplicar la ley.

En 4 de diciembre de 1925 Eduardo Saldaña y los demás citados pidieron una nueva vista para que se resolviera acerca de sus reclamaciones, a cuya petición se opuso el síndico de la Central Vannina. Y en 9 de julio de 1927 se dictó por la Corte de Distrito de San Juan una resolución en el caso declarando que los peticionarios no tenían causa de acción para reclamar sus gratificaciones que eran una donación y no se había demostrado que se hubiera notificado en forma a los donatarios y que éstos hubieran aceptado por escrito, y ordenando se eliminara de los libros de contabilidad de la Central Vannina la partida por dichas gratificaciones ascendente a $23,170. Apelaron de esta resolución Eduardo Saldaña y los demás interesados en 20 de julio de 1927.

En 28 de julio de 1927 los mismos Eduardo Saldaña, Echevarría y Ramos, Bartolomey y demás antes citados presentaron una moción de reconsideración ante la misma Corte de Distrito de San Juan para que no se eliminara de los libros la referida partida de $23,170; tal moción fué vista el 9 de septiembre de 1927 compareciendo las partes y argumentando la Central Vannina que existiendo pendiente una apelación no debía considerarse la moción presentada por falta de jurisdicción.

Resolviendo la moción de reconsideración la corte en 27 de septiembre de 1927 declaró que las partidas que sumaban

la antes citada suma deben quedar en los libros sujetos al pago en la misma forma que las demás deudas ordinarias de la corporación.

Y contra esta resolución apeló en 5 de octubre de 1927 el síndico de la Central Vannina. Esta es la apelación pendiente ante nosotros.

▮▮ El apelante señala tres errores que estudiaremos. El primero se formula así:

"La corte cometió error al declarar sin lugar la petición de Central Vannina, Inc., de que se cancelaran las donaciones ascendentes a $23,170, ya que dichas donaciones no fueron aceptadas por los opositores y por tanto éstos no tienen derecho a cobrar, aun en el caso de que el acuerdo del *board* de directores de 29 de febrero de 1924 fuese nulo."

No creemos que pueda legalmente discutirse aquí la cuestión de aceptación válida de la donación.

Ante todo, hay en autos una estipulación de las partes, en la que, entre otros extremos, aparece que la existencia de las bonificaciones fué notificada a los interesados, y éstos aceptaron las notificaciones y actuaron durante la zafra bajo la creencia de que tales bonificaciones les serían satisfechas.

La ley define la donación así:

Artículo 625, Código Civil: "La donación es un acto de liberalidad por el cual una persona dispone gratuitamente de una cosa en favor de otra que la acepta."

Las notas características y esenciales de la donación, son la liberalidad del donante, y la gratuidad del acto. Si aquella liberalidad tiene una compensación, y desaparece también la gratuidad, no hay donación, en su legítimo sentido.

Es cierto que entre las donaciones aparecen las remuneratorias, en las que la causa está constituída por los servicios prestados al donante (Art. 627 a, Código Civil). Pero debe notarse que siempre se trata de servicios *prestados* que no tengan el carácter de deudas exigibles. Aquí, si se trató de servicios ya prestados, ellos tenían el carácter de retri-

buíbles, en una cantidad que se pudo aumentar sin que se cayera en la donación; y si se trataba de los servicios a prestar en la zafra, la bonificación no era más que un aumento de la retribución del servicio y no un acto de liberalidad, y una prestación gratuita.

Pero de todas formas, por la estipulación de que antes hablamos, se hace claro que la declaración de bonificaciones se hizo, que se notificó a los interesados, y que ellos aceptaron la notificación, frase esta última que no tiene otro contenido lógico y legal que el de aceptación de la donación. Buena y suficiente fué, para la Central Vannina, esa aceptación, y ello se muestra en la manera de proceder de la junta general de accionistas cuando en 15 de septiembre de 1921, adopta el acuerdo que dice:

"Dióse por el Secretario lectura del acta anterior y fué aprobada, pero aclarando el acuerdo que contiene el particualr 4to. de dicha acta sobre sueldos y gratificaciones al personal y empleados, haciendo constar que la cantidad de $23,170.00 que importan las gratificaciones aludidas fué cancelada para ser satisfecha cuando a juicio del Board de Directores de la corporación esté en situación económica adecuada, de modo que los recursos de que pueda disponer le permitan cumplir sin perjuicio de las obligaciones ordinarias de la corporación tal acto de generosidad, hoy imposible de realizar debido al quebranto experimentado en la venta de azúcares de la cosecha pasada y a la pérdida sufrida en la zafra de este año."

En esa fecha, algo más de un año después de concedida la bonificación, se modifica por la junta general de accionistas en cuanto a la época en que se ha de pagar; y al hacer esto, se confirma la bonificación, que es ya un hecho indiscutible.

Aplícase aquí la cita de Manresa en el comentario al Código Civil Español, página 79, Tomo 5, cuarta edición. Dice:

"(c) Las participaciones que suelen dar los comerciantes a sus factores y dependientes en los productos de sus empresas mercantiles o de alguna determinada, dice en su primer considerando la sentencia de 16 de febrero de 1899, no constituyen donación, en la acepción legal de la palabra, porque no tienen su causa en una liberalidad, sino

que antes bien obedece a un móvil interesado, cual es el de recabar por el estímulo de la ganancia la cooperación más activa e inteligente que la que humanamente puede esperarse de la retribución fija, no acompañada de futuras, aunque aleatorias, ventajas.''

Esas son, en efecto, las palabras del Tribunal Supremo de España en la citada sentencia en un recurso de casación en pleito entre Doña Josefa de Manzanedo y Don Santiago Ariestoy. Y en ese caso también se alegó que no constaba la aceptación de la donación; pero el tribunal resolvió que lo que se designaba por la demandada como donación, no lo era.

En este caso ante nos, tampoco hay una donación por el mismo motivo de no tratarse de un acto de pura liberalidad o desprendimiento.

No queremos que pase desapercibido algo que es extraño y poco corriente. En la copia de la estipulación de las partes ante la corte de distrito, de la cláusula IV, aparece que los empleados de que se trata fueron notificados del acuerdo por el que se les hacía la bonificación, y ''*aceptaron las notificaciones.*'' Este mismo término se repite en la copia de resolución de la corte en 9 de julio de 1927; y asimismo aparece en el alegato de los apelantes. En el alegato de los apelados aparece de otro modo: ''que los peticionarios *aceptaron las bonificaciones, y actuaron.*''

No es fácil encontrar un sentido lógico a la frase ''aceptaron las notificaciones'', ya que la notificación es algo que no tiene que aceptarse o rechazarse. Si hay una duda sería para interpretarla en el sentido de que se aceptaron las bonificaciones. Pero de cualquier forma, no habiendo una donación esa materia de aceptación pierde todo interés.

■ Se alega que la corte erró al declarar que el acuerdo de 29 de febrero de 1924 no podía sostenerse, y que estaba en vigor el de 14 de agosto de 1920.

El acuerdo de la junta general de accionistas en 14 de agosto de 1920 fué así:

"Dióse cuenta con la planilla de los funcionarios, personal y empleados para el próximo año con los sueldos asignados a cada uno, a contar del 1ro. de julio próximo pasado, y gratificaciones por el pasado que dice así:

*"Gratificaciones*

| | |
|---|---|
| "Eduardo Saldaña_____ | \$3, 000. 00 |
| "Arturo Echevarría_____ | 600. 00 |
| "Nicolás Torres_____ \_\_\_ | 260. 00 |
| "José Rocafort _____ | 220. 00 |
| "Juan Vilá_____ | 101. 00 |

y se acordó aprobarla en todas sus partes."

En 15 de septiembre de 1921, la junta general de accionistas tomó otro acuerdo que aparece copiado en la estipulación que se ha transcrito; y el 29 de abril de 1924, el *board* o junta de directores acuerda dar por saldada la cuenta de gratificaciones, en razón a las circunstancias, y declarando que esas gratificaciones se habían hecho a título gratuito y condicional, siempre que el producto de la venta de azúcares de la zafra de 1920 lo permitiera.

Ahora, en este caso, se sostiene que los directores tenían facultad para actuar como quisieran y dejar sin efecto las bonificaciones acordadas por la junta general de accionistas.

Es de notar que la junta general de accionistas no ha establecido, por lo que aparece de autos, que la concesión de bonificaciones dependa del precio que obtengan los azúcares de la zafra de 1920; esto lo dice el acuerdo de la junta de directores, pero no lo encontramos comprobado.

Hay que tener en cuenta que en 15 de septiembre de 1921, la situación es ésta: Se han establecido las bonificaciones; no se han pagado; parece que no hay fondos para pagarlas; la junta de accionistas emplea las palabras "se cancelan," pero dice que para ser satisfechas cuando, a juicio del board de directores, la corporación esté en condiciones económicas favorables para pagarlas, lo que, lejos de cancelar las bonificaciones, las confirma, condicionando el tiempo para el pago. Y la junta de directores, en vez de seguir lo acordado por la corporación, declara extinguidas las bonificaciones.

Se han hecho numerosas citas, que no encontramos de la aplicación con que las quiere presentar la apelante. El poder de la junta de directores para llevar los negocios de la corporación es amplio, sin duda alguna; pero no hasta el extremo de aniquilar la voluntad de los accionistas declarada en junta general.

En nuestra ley de corporaciones privadas se dice:

"Art. 11. Los negocios de toda corporación serán manejados por sus directores, cada uno de los cuales, deberá ser, en el momento de su elección, accionista de buena fe, de la corporación . . . ."

Es indudable que se confiere a los directores un gran poder para administrar; y a éste se refieren casi todas las autoridades que se nos citan. Pero no se les da el poder de destruir lo resuelto por la corporación misma por los acuerdos de su junta de accionistas. No aun creemos que puede una junta de directores, que son *accionistas,* destruir un acuerdo de la junta general de accionistas, en la que habló la corporación entera.

En cuanto al tercer señalamiento de error, en el sentido de que lo fué el que la corte reconsiderara su resolución de 9 de julio de 1927, y dictara otra distinta, cuando los opositores habían ya apelado de la primera, no encontramos que tal error exista.

El amplísimo precepto del artículo 140 del Código de Enjuiciamiento Civil, faculta a las cortes para determinaciones de esa clase. Más que los términos del mismo que la apelante cita, es de tener en cuenta el sentido y el espíritu del precepto.

En el caso *Pérez* v. *Corte de Distrito,* Honorable Carlos Llauger, 39 D.P.R. 130, hemos dicho:

"El motivo que tuvo la corte de distrito para negarse a reconsiderar su sentencia declarando a la demandante 'desistida y abandonada de su acción' fué el creer que había perdido su jurisdicción por haber transcurrido el término en que la sentencia fué dictada.

"No estamos conformes. Aunque la petición de la demandante

se titula de reconsideración y aunque en ella no se cita el artículo 140 del Código de Enjuiciamiento Civil, es lo cierto que de ella se deduce que el poder que tal artículo confiere fué el que se pidió a la corte que ejercitara. La misma corte de distrito expresa en su resolución negando la reconsideración que cuando dictó su sentencia por abandono no conocía la existencia de la moción de la demandante pidiéndole que resuelta la excepción previa en su contra dictara sentencia para poder apelar. ¿Se quiere un caso más claro de inadvertencia?"

*No existe ninguno de los errores señalados, por lo que debe confirmarse la resolución apelada.*