PEDRO VERGNE ROIG, ET AL., peticionarios, *v.* TRIBUNAL SUPERIOR DE MAYAGÜEZ, HON. A. FIOL NEGRÓN, JUEZ, demandado; CERVECERÍA REAL, INC., y GABRIEL C. SOLER, interventores.

Número 2079.

*Sometido:* 2 de julio de 1954. *Resuelto:* 3 de agosto de 1954.

24

*Charles R. Hartzell, Rafael O. Fernández y José Sabater*, abogados de los peticionarios; *Amador Ramírez Silva y Enrique Báez García,* abogados de los interventores.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

La entidad, Cervecería Real, Inc., es una corporación que se dedica a la fabricación y venta de cerveza y malta. El 16 de diciembre de 1952 se celebró la reunión anual de accionistas de la corporación, no estando aquí en controversia la validez de esa reunión, en donde fueron electos como directores de la corporación los accionistas Alberto Inocente Álvarez, Lydia Fajardo de Álvarez, Jaime Annexy Iglesias, Vicente M. Ydrach y José A. Ponce. En la misma fecha de su elección se reunió la Junta de Directores y autorizó al Presidente, Alberto I. Álvarez para contratar los servicios de Pedro Vergne Roig, como Administrador General de la corporación, por un término de tres años, y en esa misma fecha se otorgó el contrato al efecto.

El día 14 de diciembre de 1953, fecha señalada por los estatutos internos o reglamento de la corporación para la celebración de la correspondiente reunión anual de accionistas, se inició y celebró la reunión con la presencia y participación de un grupo de accionistas que eran tenedores de un total de 1,658 acciones, siendo el número total de acciones de la corporación el de 5,548 acciones. Los esposos Alberto I. Álvarez y Lydia Fajardo de Álvarez tenían, cada uno, a su nombre en los libros de la corporación, 1,713 acciones, o sea, 3,426 ac-

ciones entre ambos. Ellos no comparecieron ni participaron en la reunión, en cumplimiento de una orden judicial dictada en el curso de un litigio pendiente entre ambos. De todos modos, en la reunión anual del 14 de diciembre de 1953, estaban representadas menos de las $4/_5$ partes de las acciones emitidas por la corporación y, por lo tanto, no existía, o no concurrió el quórum requerido por la sec. 2 del art. 1 del Reglamento (*by-law*) de la corporación, que lee así: (¹)

"Sección 2.—QUÓRUM. Excepto como se dispone más adelante, la presencia, en persona o por poder ('proxy') de los tenedores de $4/_5$ partes de las acciones emitidas con derecho al voto será necesaria para constituir un quórum para el trámite o despacho de los asuntos o negocios de la corporación, pero un número menor puede recesar o suspender la sesión (*may adjourn*) hasta una fecha futura que no sea menos ni más de diez días después, y el Secretario entonces (*thereupon*) así lo notificará por correo, por lo menos con cinco días de anticipación, a cada accionista que hubiese estado ausente de tal reunión. Si no se constituye un quórum en virtud de la segunda notificación, la reunión se suspenderá (*shall adjourn*) hasta una fecha futura que no sea menos ni más de quince días después, y el Secretario entonces enviará, por correo certificado con acuse de recibo, una notificación a tal efecto, a cada accionista con derecho al voto que hubiese estado ausente de tal reunión. En esta última notificación el Secretario informará a los accionistas que cualquier número de accionistas presentes en tal última fecha constituirá quórum para el trámite o despacho de los asuntos."

---

(¹) El reglamento de la corporación (*by-law*) se aprobó en un texto inglés. La sec. 2 del art. 1 lee en la siguiente manera, en su texto inglés:

"Sec. 2. QUORUM. Except as hereinafter provided for, the presence in person or by proxy of the holders of $4/_5$ of the outstanding stock entitled to vote shall be necessary to constitute a quorum for the transaction of business, but a lesser number may adjourn to some future time not less than nor more than ten days later, and the Secretary shall thereupon give at least five days notice by mail to each stockholder entitled to vote who was absent from such meeting. In the event that quorum is not constituted in consequence of the second notice, the meeting shall adjourn to some future date not less than nor more than fifteen days later and the Secretary shall thereupon give at least five days notice by registered mail with acknowledgment receipt to each stockholder entitled to vote who was absent from such meeting. The Secretary shall in this last notice inform the stockholders that any number of stockholders present on such date will constitute quorum for transaction of business."

No obstante el hecho de que en la reunión anual del 14 de diciembre de 1953 no mediaba el quórum requerido, y que dos de los accionistas presentes plantearon la cuestión de quórum, los accionistas tenedores de una mayoría de las 1,658 acciones allí representadas procedieron a celebrar la reunión, declarando sin lugar la cuestión de quórum planteada, y eligieron como directores de la corporación a los accionistas Alberto I. Álvarez, Lydia Fajardo de Álvarez, Mario Escudero, José A. Ponce y Gabriel C. Soler, y terminaron y levantaron la sesión sin decretar receso alguno (*adjournment*) de la misma para una fecha futura. Algunos de los accionistas, que son los interventores en este litigio, impugnaron luego, por escrito, esta reunión.

. Inmediatamente después de la reunión, se reunieron tres de los "directores" electos, o sea, Gabriel C. Soler, Mario Escudero y José A. Ponce y nombraron a Gabriel C. Soler como administrador general de la corporación, para que tomase posesión del cargo inmediatamente.

El 19 de diciembre de 1953 el Secretario de la corporación, Enrique Córdova Díaz, envió la siguiente notificación a los accionistas:

"Por la presente le cito a usted como accionista de Cervecería Real, Inc., para la reunión anual ordinaria de accionistas a celebrarse el 24 de diciembre de 1953 en las oficinas principales de la corporación en Mayagüez, Puerto Rico, a las 2 P.M. de dicho día. Esta reunión se cita de conformidad con el Reglamento de la corporación (*by-laws*) por existir dudas en cuanto a la reunión ordinaria anual de accionistas celebrada el día 14 de diciembre de 1953 en lo que al quórum respecta."

El 24 de diciembre de 1953 se celebró la nueva reunión. De nuevo hubo ausencia de quórum, por estar representadas solamente 1,438 acciones, estando aún vigente la orden judicial ya mencionada. En esa reunión los accionistas presentes ratificaron lo acordado en la reunión del 14 de diciem-

bre, incluyendo la elección de los directores, y entonces los accionistas allí presentes *recesaron* la reunión para continuarla el día 8 de enero de 1954. El 26 de diciembre el secretario de la corporación expidió, y cursó el día 30, una convocatoria a los accionistas para la reunión del 8 de enero de 1954, indicándose en la convocatoria que "conforme al Reglamento (*by-laws*) de la corporación, cualquier número de accionistas presentes en esta reunión constituirán quórum para la transacción de negocios". Antes del día 8 de enero de 1954 la Sala de Mayagüez del Tribunal Superior ya había dejado sin efecto su orden anterior que prohibía a Álvarez y a Lydia Fajardo de Álvarez el votar en las reuniones. Eliminando el impedimento, compareció Álvarez a la reunión del 8 de enero, y votó en representación de 1,713 acciones. Los accionistas allí presentes, el día 8 de enero, eran tenedores de, o representaban, 3,173 acciones. Los accionistas ausentes, que son los interventores en este litigio, impugnaron por escrito la validez de esa reunión, al igual que lo habían hecho antes en cuanto a las reuniones del 14 y del 24 de diciembre de 1953, por no haberse seguido los trámites del Reglamento. Los accionistas reunidos el 8 de enero desestimaron esa impugnación, y se procedió a la elección de directores, resultando electos los accionistas Alberto I. Álvarez, Lydia Fajardo de Álvarez, Jaime Annexy Iglesias, Mario Escudero y José A. Ponce. Terminada la reunión, los directores Álvarez, Escudero y Ponce se reunieron y designaron presidente de la corporación a Álvarez, vicepresidente a Escudero y secretaria a Lydia Soler Fajardo, y también nombraron a Gabriel C. Soler para el cargo de administrador general de la corporación.

Al tratar Soler de tomar posesión del cargo al que había sido designado, se vió impedido de hacerlo por la negativa de Pedro Vergne Roig, previamente designado por la junta anterior para el mismo cargo, a entregarle la posesión de la planta, propiedad, libros, sello y documentos de la corpo-

ración.  Se presentó entonces en la Sala de Mayagüez una acción de *injunction* contra Pedro Vergne Roig, en que aparecen como demandantes la corporación, Cervecería Real, Inc., y. Gabriel C. Soler.  En esa demanda se alega, en síntesis, que el día 8 de enero de 1954 la junta de directores de la corporación había designado a Soler como administrador general por el término de un año, estando ocupado ese cargo, como cuestión de hecho, por el demandado Vergne Roig; que la corporación y el codemandante Soler requirieron a Vergne Roig para que entregara el cargo a Soler, así como la planta industrial, oficinas, documentación, fondos y demás propiedad mueble e inmueble de la corporación, pero Vergne Roig se negó a entregar el cargo y tales bienes, insistiendo en continuar desempeñando el cargo, y reteniendo toda la indicada propiedad mueble e inmueble de la corporación; que tal actitud de Vergne Roig constituye un acto de perturbación y despojo *de la propiedad* de la corporación demandante y que de continuar Vergne Roig al frente de la administración de los negocios la corporación estaría expuesta a sufrir graves daños a sus intereses, ya que Vergne Roig podría incurrir en actos de sabotaje.  Se solicita en la demanda que se dicte sentencia declarando que Vergne Roig debe cesar en su actitud de perturbar a la demandante en la libre administración de sus negocios y que él debe entregar la planta industrial, así como las oficinas, documentación, fondos y demás propiedad mueble e inmueble de la corporación al codemandante Gabriel C. Soler, "quien es la persona únicamente autorizada por la corporación para conservar toda la propiedad mueble e inmueble de la corporación" y declarando que Vergne Roig debe abstenerse de continuar ejerciendo o pretendiendo ejercer el cargo de administrador general, dejando que la corporación, a través de Soler, asuma la administración de sus negocios.

Compareció el demandado Vergne Roig y alegó, en esencia, que la designación de Soler había sido ilegal, y que la

junta que lo designó había sido una junta ilegal, exponiendo los hechos que hemos reseñado, para demostrar tal ilegalidad. Un grupo de accionistas, que habían estado ausentes en las tres reuniones del 14 y 24 de diciembre de 1953, y del 8 de enero de 1954, y que habían impugnado la validez de esas reuniones, solicitaron permiso para intervenir como demandados en la acción de injunction. Los demandantes se allanaron a que se permitiese tal intervención, lo cual se hizo. En su contestación, los interventores formularon las mismas alegaciones de Vergne Roig, en cuanto a la ilegalidad de la designación de Soler como administrador general y en cuanto a la ilegalidad de la junta de directores que designó a Soler. El día 9 de enero, o sea, el mismo día en que se radicó la demanda, todas las partes concernidas en el litigio, firmaron una estipulación en que acordaron "dirimir la controversia surgida entre ellos en relación con la posesión de las propiedades de la corporación y del cargo de administrador general de dicha corporación a través de un procedimiento de injunction a ser radicado en la Sala de Mayagüez del Tribunal Superior de Puerto Rico, cuyo procedimiento se radicará en el día de hoy por los interesados de la segunda parte".

Se celebró la vista del caso y la Sala de Mayagüez dictó sentencia declarando con lugar la demanda, y requiriendo de Vergne Roig la entrega del cargo y las propiedades de la corporación a Soler y prohibiendo a Vergne Roig que continuase ejerciendo las funciones de su cargo, y a Vergne Roig y a los interventores el realizar acto alguno que impida a la corporación, a través de Soler, el hacerse cargo de las propiedades y negocio de la corporación. El tribunal de instancia formuló conclusiones de derecho al efecto de que la junta de directores electa el 8 de enero de 1954 "tiene el control y manejo de los asuntos y de los negocios de Cervecería Real, Inc., y representan a la corporación en tal carácter"; que tal junta había designado a Soler como administrador general, y tenía el derecho, que ejercitó, al designar a Soler, de remo-

ver a Vergne Roig de su cargo; que la corporación tiene el derecho a la libre administración de sus negocios a través de la junta electa el 8 de enero de 1954 y a través del nuevo administrador Soler, teniendo, por lo tanto, el derecho a remover a Vergne Roig; que no es necesario el considerar o resolver sobre la validez o ilegalidad de la junta de directores electa el 8 de enero de 1954, "ya que los directores así electos pueden ser considerados cuando menos como directores defacto de la corporación y como tales sus actos son válidos en cuanto concierne a la corporación y sus accionistas y empleados" y que tales directores defacto, electos en la reunión del 8 de enero, no pueden ser impugnados colateralmente en un procedimiento de injunction.

Vergne Roig y los interventores, los aquí peticionarios, han apelado de tal sentencia ante este Tribunal, y presentaron además una petición de *certiorari*. Expedimos el auto correspondiente, y llegamos ahora a la conclusión de que la sentencia impugnada en este procedimiento de certiorari debe ser anulada y dejada sin efecto.

■■ Debemos disponer, en primer término, de una cuestión preliminar. Los aquí peticionarios, demandados en la acción de injunction (grupo de accionistas que respaldan a Vergne Roig), alegan que la acción de injunction no es la adecuada para dilucidar controversias entre grupos rivales de directores, que envuelvan la legalidad de elecciones de directores. Independientemente del hecho de que todas las partes estipularon, en el tribunal a quo, que la controversia surgida entre ellos se dirimiese en el procedimiento de injunction, consideraremos los méritos de la cuestión planteada. Es cierto que, generalmente, no existe poder inherente, en equidad, de los tribunales para considerar, a través de un procedimiento de injunction, las controversias entre grupos rivales de directores y funcionarios corporativos con respecto a la validez de elecciones y designaciones de tales directores y funcionarios, no siendo, generalmente, el injunction un re-

medio adecuado para dilucidar el título a tales cargos. 13 Am. Jur. 861, 866, secs. 874 y 882; Cook, Corporations, 6ta. ed., tomo 2, págs. 1686, 1687, sec. 618; Fletcher, Cyclopedia of Corporations, edición permanente, tomo 2, pág. 132, sec. 367. Sin embargo, si la acción de injunction se basa en otros fundamentos propios de tal acción, y las cuestiones relativas a la validez de tales elecciones son incidentales a esos fundamentos, que constituyen el remedio primordial solicitado, procede entonces la acción de injunction, aunque sea necesario resolver la cuestión incidental de la validez de tales elecciones o designaciones. 13 Am. Jur. 861; Fletcher, ob. cit., sec. 368, págs. 134, 135; *Milasinovich* v. *Serbian Progressive Club*, 84 A.2d 571; 100 Pa. L. Rev. 898, 899. En la demanda entablada en este caso se solicita la posesión y el control de un negocio y de ciertas propiedades específicas; se alegan actos de perturbación y despojo; se pretende la transferencia de la administración de un negocio y se alega que la corporación podría sufrir daños graves, a través de actos de sabotaje, de no concederse lo solicitado por los demandantes. Tales fundamentos son propios de una acción de injunction y si, incidentalmente se hace necesario el considerar cuestiones relativas a la validez de reuniones corporativas y designaciones de funcionarios, ello no debe derrotar el poder judicial primario ya adquirido. Es más conveniente el subordinar los tecnicismos procesales para que el tribunal pueda considerar los méritos intrínsecos de las cuestiones planteadas.

El tribunal de Mayagüez resolvió que era innecesario el dictaminar sobre la validez de la reunión del 8 de enero de 1954 y, por lo tanto, sobre la validez de las reuniones del 14 y el 24 de diciembre de 1953, porque, como cuestión de hecho, se había celebrado una reunión el 8 de enero de 1954 y, como cuestión de hecho, en ella se había elegido una junta de directores, habiendo una mayoría de los directores designado a Soler como administrador general; que, en

vista de ello, los directores electos el 8 de enero eran y son directores defacto, "y como tales sus actos son válidos en cuanto concierne a la corporación y sus accionistas y empleados", y obligan a la corporación, y, siendo directores defacto, su *status* y la validez de sus cargos no pueden ser impugnados colateralmente en este procedimiento. Sin embargo, las circunstancias de este caso ofrecen varios obstáculos insuperables a la aplicabilidad al caso de autos de la doctrina de "funcionarios defacto".

La doctrina de "funcionarios defacto" de una corporación, y de la obligatoriedad de sus actos, está predicada en razones de política pública y de necesidad. Cuando a través de un período razonablemente continuo de tiempo, determinadas personas *han actuado de hecho* (defacto) como funcionarios de una corporación y en virtud de tales actuaciones, *no impugnadas públicamente por la corporación*, se induce a *terceras personas* y al público a creer que tales personas son realmente funcionarios corporativos, la corporación es responsable a esas terceras personas por las actuaciones de esos funcionarios defacto, ya que, a los fines de lograr estabilidad y un sentido de confianza en el trámite de los asuntos corporativos, ante el público, la corporación tiene necesariamente que actuar a través de ciertos funcionarios, y no se debe obligar a terceros y al público a llevar a cabo investigaciones continuas en cuanto a la legalidad del *status* de tales funcionarios aparentes, sino que los terceros deben tener derecho a descansar en las apariencias, estando la corporación impedida (*estopped*) de negar o evadir las consecuencias de esas actuaciones implícitamente consentidas por la corporación en virtud de su aquiescencia en la continuación de tales actuaciones y de tales apariencias. Fletcher, Cyclopedia of Corporations, ed. permanente, tomo 2, pág. 142 et seq., secs. 372 y 374, pág. 159 et seq., sec. 383; 13 Am. Jur. 861, 862, secs. 876, 877.

La doctrina de "funcionarios corporativos defacto" cubre solamente las relaciones de esos funcionarios con terceras personas, para establecer obligaciones de la corporación a esas

terceras personas.  13 Am. Jur. 862;  Fletcher, ob. cit., pág. 144, 148, 159;  19 C.J.S. 76, 77, sec. 739;  *Mortgage Land Inv. Co.* v. *McMains,* 215 N.W. 192;  *Lazenby* v. *Henderson,* 135 N.E. 302.  Pero la doctrina no es aplicable cuando se trata de conflictos entre juntas rivales de directores, o entre grupos rivales de funcionarios, o entre la corporación o los accionistas y un grupo de directores, no siendo obligatorios los actos de llamados funcionarios defacto en cuanto a intereses en conflicto dentro de la propia corporación.  19 C.J.S. 76, 77;  *Ellsworth Woolen Mfg. Co.* v. *Faunce,* 10 Atl. 250;  *Stratton Mass. Gold Mines Co.* v. *Davis,* 111 N.E. 375;  *Schmidt* v. *Mitchell,* 41 S.W. 929;  *Mortgage Land Inv. Co.* v. *McMains,* supra;  Fletcher, ob. cit., pág. 166, sec. 388.  Directores defacto no pueden, *contra la corporación en sí,* delegar poderes que ellos mismos no poseen, y no pueden crear, por designación, funcionarios de jure.  *Stratton Mass. Gold Mines Co.* v. *Davis,* supra;  *In re George Ringler & Co.,* 97 N.E. 593.  Cuando es la corporación, o sus accionistas, o los funcionarios auténticos, los que impugnan a los funcionarios defacto, la investigación judicial se refiere a la realidad de la situación jurídica, y no a su apariencia.  Las razones que le dan vida a la doctrina de funcionarios defacto, no son aplicables a los interesados en, o a los miembros de, la corporación.  A las terceras personas no se les debe imponer el gravamen de investigar la solidez y virtualidad del título de los aparentes funcionarios que contratan con ellas, ya que ellas no están en condiciones adecuadas para practicar tal investigación antes de contratar, y ello retardaría la contratación.  Pero los accionistas y los interesados en la corporación, y los directores legales, no solamente están en condiciones de conocer la situación real, sin ulterior investigación, sino que también, como materia de doctrina general, tienen el derecho y el deber de proteger a la corporación contra las actuaciones de personas que pretenden usurpar o desempeñar ilegalmente las funciones corporativas.  Tal como se indica

en el caso de *In re George Ringler & Co.*, supra, (Nueva York, citado en Fletcher, ob. cit., pág. 158), debe prevalecer la regla de que, si la elección de unos aparentes directores es claramente inválida, su tentativa de designar otros funcionarios debe ser también ilegal *con respecto a la corporación y sus accionistas*, ya que, de resolverse lo contrario, se produciría el resultado curioso e indeseable de que unos intrusos en la junta de directores pudiesen designar legalmente a otros funcionarios de su propia selección, usurpando así las funciones corporativas. Si, en un procedimiento en que no estén envueltos terceros, la corporación o sus accionistas no pudiesen impugnar, aunque fuese colateralmente, la legalidad del título de unos funcionarios defacto, estos últimos podrían mantener indefinidamente sus cargos, sin base legal para ello. Debemos observar, además, que lo que interesa Soler en el caso de autos, en representación de los directores que lo designaron, es el control del negocio y de las propiedades de la corporación. Independientemente de la cuestión de si Vergne Roig podría o no impugnar el título de Soler y de los directores que lo designaron, lo cierto es que el ataque a Soler se formula también por un grupo de accionistas y de directores rivales que intervinieron en el litigio con el consentimiento expreso de los demandantes. Tales interventores, que alegan que son ellos los que realmente representan a la corporación, deben tener la aptitud de tratar, a través de un ataque colateral, de que la corporación no sea controlada por un grupo de directores electos ilegalmente, y tales interventores, interesados directamente en la corporación, deben tener el poder de tratar de demostrar que la corporación no ha sido legalmente autorizada para comparecer como demandante en este litigio.

La aplicación de la doctrina de la obligatoriedad de los actos de funcionarios defacto con respecto a terceras personas requiere que tales funcionarios realmente hayan desempeñado sus funciones como tales, y hayan estado en posesión

del cargo, durante un período razonablemente continuo de tiempo, ya que tales actuaciones más o menos continuas son las que crean las apariencias que inducen al público a creer en la autenticidad del título de esos funcionarios. Fletcher, ob. cit., pág. 145, 147, sec. 372; 19 C.J.S. 78, sec. 740; *Lazenby* v. *Henderson*, supra; *Conaty* v. *Torghen*, 128 Atl. 338; *Consumers Salt Co.* v. *Riggins*, 208 Cal. 537; *Independence Land Co.* v. *Kingsbury*, 175 F.2d 983. Los directores que alegan ser funcionarios defacto deben haber estado a cargo de los asuntos de la corporación, como cuestión de hecho. *Fernández* v. *Corte*, 71 D.P.R. 161, 183; Fletcher, ob. cit., pág. 147. No serían defacto si ellos no han tenido la posesión o control de los sellos, libros, documentos y propiedades de la corporación, o si no han tenido la posesión del sitio que tenía el carácter y la reputación de ser la oficina de la corporación. Fletcher, ob. cit., pág. 147; *Waterman* v. *Chicago Ry. Co.*, 29 N.E. 689. El requisito del desempeño actual y razonablemente continuo de funciones no ha sido cumplido en el caso de autos.

En cuanto a funcionarios defacto se ha aplicado el concepto del impedimento (*estoppel*), basado en el hecho en sí de las actuaciones de los "funcionarios", en el hecho de que el público ha descansado en tales actuaciones y en que la corporación, a través de su pasividad, ha demostrado su aquiescencia en tales actuaciones. En el caso de autos la corporación no ha demostrado que haya consentido implícitamente en las actuaciones de los directores que designaron a Soler.

En su alegato, los demandantes y aquí interventores sostienen que el litigio tramitado en el tribunal de Mayagüez tiene las características de un injunction posesorio, debiendo limitarse la controversia al hecho en sí de la posesión de las propiedades corporativas, y no al derecho o la posesión. No se trata aquí de un injunction posesorio, sobre bienes inmuebles, sino más bien del injunction clásico. Los demandantes no han alegado ni demostrado que ellos hayan estado en la posesión de los bienes y del negocio durante el año anterior

a la demanda. Precisamente lo que ellos solicitan es que se les conceda la posesión, y lo que se plantea en la demanda es el derecho a la posesión. Dentro del procedimiento usual de injunction, como lo es el del caso de autos, puede discutirse la legalidad del título de Soler y de los directores que lo designaron.

Es necesario, por lo tanto, el considerar la validez de la reunión de accionistas celebrada el 8 de enero de 1954, y la legalidad de la elección de directores que se verificó en esa reunión. La legalidad de la reunión del 8 de enero depende de la validez de la reunión del 14 de diciembre de 1953 y, especialmente, si la sesión del 14 de diciembre fué suspendida o levantada (*adjourned*) en forma legalmente adecuada. Si, en vista de la ausencia de quórum, la reunión del 14 de diciembre fué suspendida para una fecha futura de acuerdo con el reglamento de la corporación, las reuniones del 24 de diciembre de 1953 y del 8 de enero de 1954 debían ser consideradas como una continuación de la reunión del 14 de diciembre, legalmente suspendida para una fecha futura, y los acuerdos tomados en la reunión del 8 de enero, en que había quórum, serían válidos, ya que la reunión del 8 de enero habría sido legalmente convocada. *Sagness* v. *Farmers Co-operative Creamery Co.*, 293 N.W. 365; *Vogel* v. *Parker*, 193 Atl. 817, 818 (New Jersey); *Atterbury* v. *Consolidated Coppermines Corporation*, 20 A.2d 743; 5 Fletcher, Cyclopedia of Corporations 91, sec. 2015, tomo revisado del año 1952; Thompson, Corporations, tomo 2, pág. 290, sec. 928, 3ra. ed.; Cook, Corporations, tomo 2, pág. 1,630, sec. 601, 6ta. ed. De otro lado, si la reunión del 14 de diciembre de 1953 no fué legalmente suspendida para una fecha futura, las reuniones del 24 de diciembre y del 8 de enero no serían válidas, por no haber sido legalmente convocadas, y los acuerdos en ellas tomados serían nulos e ilegales. *Noremac Inc.* v. *Centre Hill Court*, 178 S.E. 877, 881, y citas inmediatamente anteriores de Fletcher, Thompson y Cook.

De acuerdo con el reglamento de la corporación, la reunión anual de accionistas tenía necesariamente que celebrarse el 14 de diciembre de 1953. La disposición contenida en el reglamento al efecto de que la reunión anual se celebrase en esa fecha era mandatoria. *Steinberg* v. *Am. Bantam Car Co.*, 76 F. Supp. 426. También era mandatoria e imprescindible la disposición contenida en el reglamento al efecto que en esa reunión anual del 14 de diciembre hubiese un quórum de cuatro quintas partes de las acciones emitidas. 13 Am. Jur. 521, sec. 480. Como cuestión de hecho, e independientemente de cuál fué la causa de tal situación, en la reunión del 14 de diciembre no hubo el quórum requerido por el reglamento. Por lo tanto, los accionistas que estaban allí presentes no tenían poder legal alguno para actuar ni para tomar acuerdo alguno, con la única excepción de adoptar el acuerdo de suspender la sesión (*adjourn*) hasta una fecha futura. *Kauffman* v. *Meyberg*, (Cal.) 140 P.2d 210; *Davidson* v. *American Paper Mfg. Co.*, 175 So. 753; Thompson, ob. cit., tomo 2, pág. 297 et seq., sec. 935; Fletcher, ob. cit., tomo 5, tomo revisado del 1952, pág. 78 et seq., sec. 2013. En ausencia de un quórum, la reunión no estaba legalmente organizada. *Davidson* v. *American Paper Mfg. Co.*, supra. La elección de directores en una reunión en que no había el quórum correspondiente era inválida. *Hill* v. *Town*, 138 N.W. 334. De acuerdo con los propios términos del reglamento, que ya hemos transcrito, el acuerdo de suspender la sesión, y el señalamiento de la fecha futura en que habría de celebrarse la próxima reunión como continuación de la del 14 de diciembre, eran función exclusiva de los accionistas presentes en la reunión del 14 de diciembre. El reglamento sigue disponiendo que, no habiendo quórum, una vez los accionistas presentes hayan acordado suspender la sesión hasta una fecha futura, el secretario entonces expedirá la correspondiente convocatoria para la próxima reunión. De acuerdo con el propio reglamento, la función del secretario es puramente ministerial, la de darle cumplimiento al acuerdo

de receso para una fecha futura, tomado por los accionistas presentes en la reunión. El secretario es un funcionario que carece de poderes para determinar las cuestiones relativas a la suspensión de las reuniones y fechas de las reuniones. Las disposiciones del reglamento, en este caso, coinciden con la regla general, que adoptamos, al efecto de que la suspensión (*adjournment*) de una reunión sin quórum para una fecha futura específica corresponde a los accionistas presentes en la reunión, y no a los funcionarios de la corporación y, por lo tanto, de no adoptarse tal acuerdo en la reunión, y de formularse tal decisión por el Secretario, sin un acuerdo previo, tal actuación o convocatoria del secretario es nula e ilegal, y carecen de validez las reuniones posteriores convocadas por el secretario. *Chicago Macaroni Mfg. Co.* v. *Boggiano*, 67 N.E. 17; *Egan* v. *Kelly*, 81 A.2d 413; *State* v. *Kreutzer*, 126 N.E. 54; *State* v. *Cronan*, 49 Pac. 41; Fletcher, ob. cit., tomo 5, tomo revisado del 1952, pág. 89, sec. 2015, al efecto de que la suspensión de una reunión para una fecha futura puede ser hecha solamente a través de la actuación de la propia reunión, y no a través de la actuación de un funcionario; 2 Thompson 290, sec. 928, 3ra. ed.: "tenemos que recordar que el poder de suspender una reunión reside en los propios accionistas presentes en la reunión y no en los funcionarios de la corporación"; 2 Thompson 250, sec. 898, 3ra. ed. al efecto de que el secretario es un funcionario ministerial que carece de poderes para convocar a reuniones sin previo acuerdo; Cook, Corporations, tomo 2, pág. 1632, sec. 601, sexta ed. al efecto de que los propios directores carecen del poder de posponer una reunión de accionistas mediante el envío de notificaciones a tal efecto.

Con respecto al caso de autos, al iniciarse la reunión del 14 de diciembre de 1953, al no haber quórum, algunos de los accionistas presentes plantearon la cuestión de la ausencia de quórum, y solicitaron que se levantase o suspendiese la reunión de acuerdo con el reglamento, esto es, para una fecha futura. La mayoría de los accionistas allí presentes, que no

formaban quórum, desestimaron esa solicitud, y expresaron su criterio, erróneo, de que había un quórum suficiente. Procedieron a elegir nuevos directores y levantaron la sesión, sin mencionar fecha futura alguna. Es claro que fué la intención de tales accionistas el considerar la reunión del 14 de diciembre como definitiva, sin que fuese necesario el celebrar sesiones futuras. Esto es, al adoptarse el acuerdo de levantar la sesión, ello no se hizo con la intención de continuar la sesión en una fecha futura, sino con la intención de terminar definitivamente la reunión anual. Fué el secretario, posteriormente, el que se tomó la iniciativa de convocar para una reunión para el 24 de diciembre, sin que se hubiese adoptado tal acuerdo en la reunión del 14 de diciembre, indicando el propio secretario que él convocaba a nueva reunión en vista de dudas sobre la presencia de un quórum en la sesión anterior. Fué nula la convocatoria cursada por el secretario, y, por lo tanto, fueron nulas, y sin efecto legal alguno, las reuniones del 24 de diciembre y del 8 de enero de 1954, siendo ilegal la elección de los directores que designaron a Soler como administrador general, por no haberse cumplido con los términos del reglamento de la corporación.

Podría alegarse que, desde el punto de vista de la justicia intrínseca, la omisión de los que se reunieron el 14 de diciembre de levantar la sesión para una fecha futura, constituye una mera irregularidad técnica que debe ceder ante la realidad de que se celebraron reuniones posteriores en fechas compatibles con el reglamento y ante la realidad de que los directores que designaron a Soler fueron electos por una mayoría de los accionistas. Pero este es un caso en que la mayor justicia queda más garantizada por el cumplimiento de las disposiciones del reglamento. Esas disposiciones tienen su razón de ser. La norma más saludable consiste en requerir que la decisión en cuanto a la celebración de una reunión futura sea formulada por los accionistas presentes en la reunión en que no haya habido quórum. Sería un precedente peligroso el permitir que un funcionario ministerial de la

corporación tenga el poder legal de resolver sobre tal extremo, en ausencia de un acuerdo previo de los accionistas. Puede ocurrir que, al no lograrse quórum, los accionistas presentes prefieran no celebrar reuniones posteriores, o no continuar la reunión inefectiva. La voluntad de esos accionistas no debe quedar suplantada por los deseos de los funcionarios. La corporación habla preferentemente a través de la junta general de accionistas, y no sólo a través de sus funcionarios. *Saldaña* v. *Comas*, 41 D.P.R. 339, 348. Son los accionistas los que constituyen la corporación. Son el poder primario del cual surge la actuación corporativa, y ellos son los que constituyen el origen, la existencia y la continuación de la corporación. Cook, ob. cit., tomo 2, pág. 1609, sec. 588; Thompson, ob. cit., tomo 2, pág. 246, sec. 895. Esos poderes vitales de los accionistas deben ser ejercitados por ellos solamente en forma conjunta, en reuniones de la corporación que sean debidamente convocadas y estén debidamente organizadas, de acuerdo con la ley y el reglamento, para que así la actuación corporativa conjunta se manifieste a través de cauces de orden, estabilidad y garantía para todos los accionistas, incluyendo a los accionistas minoritarios. Las mayorías generalmente prevalecen, pero tal voluntad mayoritaria debe manifestarse a través de procedimientos reglamentarios que sirvan de protección a los intereses de los accionistas minoritarios.

Al negarnos a reconocer consecuencias legalmente efectivas al procedimiento erróneo seguido en este caso, ello no implica que los intereses de los accionistas que respaldan a Soler hayan quedado en un estado de desamparo. De no poderse celebrar una reunión anual válida, los directores anteriores continuarían en sus cargos hasta que sus sucesores sean válidamente electos, pero, en ese caso, los directores anteriores están bajo la obligación de convocar a una *nueva reunión dentro de un período razonable de tiempo* después de la fecha en que se debió celebrar la reunión anual, y, de negarse ellos a así hacerlo, los accionistas concernidos

pueden entablar una acción judicial, por ejemplo, la de *mandamus* encaminada a lograr que los directores anteriores convoquen a la celebración de esa nueva reunión. 13 Am. Jur. 516; *Steinberg* v. *Am. Bantam Car Co.*, supra; *People* v. *Cummings*, 72 N.Y. 433; Thompson, ob. cit., tomo 2, pág. 252, 253, sec. 900; Cook, ob. cit., págs. 1615, 1616, sec. 593. En síntesis, la mayoría de los accionistas debe prevalecer, pero de acuerdo con la ley y el reglamento.

*Debe anularse y dejarse sin efecto la sentencia dictada por la Sala de Mayagüez el 28 de enero de 1954.*

El Juez Asociado Sr. Belaval no intervino.